UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SARAH FINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-397 JD |
| | ) |
| CAREER ACADEMY OF SOUTH BEND, INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Sarah Fine worked as the director of student services for Career Academy of South Bend, a charter school. She and two other employees lost their jobs in September 2015 as part of what the school describes as an effort to balance its budget. Ms. Fine alleges in this case that the budget cuts were a pretext for age discrimination. The school moved for summary judgment, arguing that the evidence could not support such a finding. For the reasons explained below, the Court agrees, so it grants the motion.

**I. FACTUAL BACKGROUND**

There are two preliminary issues to address before recounting the facts. First, a party must support the facts upon which it relies at summary judgment by "citing to *particular parts* of materials in the record" that establish those facts. Fed. R. Civ. P. 56(c)(1) (emphasis added); *Sommerfield v. City of Chi.*, 863 F.3d 645, 650 (7th Cir. 2017); *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 850 (7th Cir. 2015). That means that for each factual assertion (in the statement of facts and the argument sections), the brief should cite to a particular place in a specific exhibit that supports that assertion. Ms. Fine's brief falls short of that standard in many instances. Similar to the filing the Court discussed in a related case by Ms. Fine's former co-

worker, some factual assertions do not have any citations at all, and others are followed by string-cites to voluminous exhibits or entire depositions. *Addie v. Career Acad. of S. Bend., Inc.*, No. 3:16-cv-513, 2019 WL 1382905, at *1–2 (N.D. Ind. Mar. 27, 2019). In other instances, the exhibits that are cited bear no apparent relation to the assertions that precede them. That does not suffice, so in resolving the motion, the Court relies on the facts that have been properly cited and supported. *Id.*; Fed. R. Civ. P. 56(c)(3).

Second, Career Academy filed a separate objection to many of the exhibits Ms. Fine submitted with her response. Career Academy objects to 26 exhibits on relevance grounds, the entirety of its argument (which it repeats 26 separate times) being that "[t]he documents do not tend to prove or disprove any fact at issue in this case." [DE 37]. Not only is that rote argument unhelpful, but there is no reason to object to an exhibit on relevance grounds at summary judgment. If an exhibit is not relevant then it will not create a genuine dispute of material fact, but that is a question on the merits that should be argued in the brief. *Hess v. Biomet, Inc.*, No. 3:16-cv-208, 2019 WL 1282032, at *13 n.8 (N.D. Ind. Mar. 20, 2019). Career Academy also objects to some exhibits on hearsay grounds, but its arguments are similarly undeveloped and consist solely of the assertion that "[t]he documents are hearsay[.]" [DE 37]. The Court thus declines to entertain any of the objections. With that understanding, the Court addresses the pertinent facts.

Career Academy is a non-for-profit corporation that operates charter schools in South Bend, Indiana. In August 2011, it opened Career Academy of South Bend as a middle school with grades 7 through 9. It later expanded to include a middle school with grades 6 through 8, and a high school with grades 9 through 12. In 2015, it opened another charter school, Success

Academy of South Bend, with Kindergarten through 5th grade. From 2011 to 2015, Career Academy's total student enrollment grew rapidly, from 160 students to over 1,000 students.

Career Academy was founded by Lawrence Garatoni. In addition to being the schools' founder and benefactor, Mr. Garatoni served as president of the board of directors. Along with his wife and their foundation, Mr. Garatoni contributed millions of dollars towards purchasing and renovating their buildings. He has also provided funding to help cover their operating expenses. Over the years, Mr. Garatoni forgave many of the loans he provided to the schools, but his goal was for the schools to become self-sufficient. The schools received funding from the state for each student that enrolled, and Mr. Garatoni desired for those revenues to at least cover the schools' operating expenses, in part so that they could continue to operate even when he is no longer able to support them.

Ms. Fine joined Career Academy in March 2013 as an administrator, with the title of Manager of Student Transition. Ms. Fine was 54 years old at the time. Her title later changed to Director of Career Development, but without a change in responsibilities. In those positions, Ms. Fine's duties included helping to arrange internships for students. Ms. Fine earned a salary of $62,000 a year, plus other benefits. In May 2015, Ms. Fine transitioned to a newly created position, Director of Student Services, though her compensation did not change. In that position, Ms. Fine's duties included overseeing support staff, including the social worker, counselor, and nurse, and coordinating student services. When Ms. Fine moved to that new position, Career Academy hired a new employee to assume her prior duties, Rabab Darwish. Ms. Darwish was 24 years old at the time. Ms. Fine helped train Ms. Darwish in that position.

In September 2015, Career Academy's finance committee met to review Career Academy's budget for the year. By then Career Academy knew how many students had enrolled

and thus how much revenue it would receive for the year. The budget summary reflected that the schools' operating expenses would exceed their operating revenues by about $240,000. Mr. Garatoni thus instructed the superintendent, Paul Schlottman, that he needed to cut expenses by that amount in order to balance the budget. Mr. Garatoni told Mr. Schlottman to consider a reduction in force that would least affect the teaching of the students.

In response, Mr. Schlottman prepared a package of budget cuts. First, he proposed eliminating three positions. Those included Ms. Fine's position, another administrative position held by Chadwick Addie, and a teacher's aide position. Next, Mr. Schlottman proposed reducing his own salary by three percent and reducing all employee bonuses. Finally, he proposed other cost-cutting measures including changing the schools' cell phone plan and internet provider. The net effect of those steps would be to balance the budget. Mr. Schlottman presented that proposal to Mr. Garatoni, who approved.

Accordingly, on September 30, 2015, Ms. Fine was told that her position was being eliminated and that her employment with Career Academy was being terminated. Ms. Fine was not given the option of bumping any other employees from their positions, nor has Career Academy given any other employees such an option. When it informed her of the decision, Career Academy also presented Ms. Fine with a separation agreement. That agreement offered to make severance payments for the next three-and-a-half months, in return for which Ms. Fine would have to release Career Academy from "any liability" based on her employment or its termination. Ms. Fine declined to sign the agreement. Instead, she filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging that she was fired because of her age. After receiving a right-to-sue letter, Ms. Fine file this suit. Discovery has closed, and Career Academy has moved for summary judgment.

## II. STANDARD OF REVIEW

A court must grant summary judgment if the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations contained in its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

## III. DISCUSSION

Ms. Fine asserts a single claim alleging that Career Academy terminated her employment because of her age, in violation of the Age Discrimination in Employment Act. Career Academy seeks summary judgment on that claim. The Court recently granted summary judgment on a similar claim by Mr. Addie, whose position was eliminated at the same time. *Addie*, 2019 WL 1382905. The arguments and evidence in the two cases overlap substantially, but they are not identical, so the Court addresses each of Ms. Fine's arguments below. The result, however, is the

same, as Ms. Fine has not offered evidence from which a jury could conclude that she lost her job because of her age.

The Age Discrimination in Employment Act applies to employees who are at least 40 years old. The Act makes it unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail, a plaintiff "must prove that, but for [her] age, the adverse action would not have occurred." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018). Ms. Fine is protected by the Act, as she is over 40 years old, and she suffered an adverse action when Career Academy terminated her employment. The question is therefore whether Ms. Fine has offered evidence from which jury could conclude that she was fired because of her age.

A plaintiff can meet that burden by offering any combination of evidence that permits an inference of discrimination. *Skiba*, 884 F.3d at 719; *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (stating that the evidence "must be considered as a whole"). In evaluating that evidence, courts consider all of the evidence in combination to determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [protected characteristic] caused the discharge . . . ." *Ortiz*, 834 F.3d at 765. A plaintiff can also rely on the *McDonnell Douglas* burden-shifting framework. Under that approach, a plaintiff must offer evidence that (1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably." *Skiba*, 884 F.3d at 719; *Carson v. Lake Cty., Ind.*, 865 F.3d 526, 533 (7th Cir. 2017). If the plaintiff establishes this prima facie case, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action[.]" *Skiba*, 884 F.3d at 719. A plaintiff can then defeat

6

summary judgment by offering evidence that the employer's explanation is pretextual, meaning it is a lie. *Id.* at 719–20; *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 894 (7th Cir. 2016). "'However the plaintiff chooses to proceed, at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action *because of* her age.'" *Skiba*, 884 F.3d at 720 (quoting *Carson*, 865 F.3d at 533); *see also Ortiz*, 834 F.3d at 765.

The Court begins with Ms. Fine's argument that Career Academy's stated reason for terminating her employment was pretextual. "[P]retext is a lie—'a phony reason for some action.'" *Riley*, 829 F.3d at 894; *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 864 (7th Cir. 2015). It does not matter whether the reason is wise or even incorrect, but only whether it is honest. *Milliman v. Cty. of McHenry*, 893 F.3d 422, 433 (7th Cir. 2018). Here, Career Academy asserts that it terminated Ms. Fine's employment in an effort to balance its budget. Specifically, when its finance committee met in September 2015, the budget showed that Career Academy's operating expenses would exceed its operating revenues by about $240,000. Mr. Garatoni thus instructed Mr. Schlottman that the school needed to reduce its expenses by that amount to balance its budget, and to do so in a way that would have the least effect on teaching. In response, Mr. Schlottman proposed eliminating three positions, including Ms. Fine's; reducing his own salary and lowering employee bonuses schoolwide; and taking other cost-cutting measures. This resulted in just enough savings to balance the budget, and Mr. Garatoni approved that proposal.

Ms. Fine offers a number of arguments for why that decision was pretextual, but the evidence does not support such an inference. Ms. Fine first argues that Career Academy did not really have budget problems, since Mr. Schlottman had projected in December 2014 that Career

7

Academy could break even if it had at least 960 students, and over 1,060 students actually enrolled for the 2015 school year. That was just a projection, though. Career Academy more than doubled its enrollment from the 2014 to the 2015 school years, adding five new grades and an entirely new building. It had to increase its staff and incur other expenses to accommodate that expansion, meaning both its revenues and expenses were in great flux. There is no dispute that, once it crunched the numbers in September 2015 based on its actual expenses and actual revenues, the budget that was presented to the finance committee showed a $240,000 loss. Ms. Fine does not attempt to identify any inaccuracy in that budget. Nor is there a dispute that, upon reviewing that budget, Mr. Garatoni directed Mr. Schlottman to reduce expenses to balance the budget. Even if Ms. Fine could show in hindsight that the budget was incorrect (which she has not done), a mistaken reason is not a pretextual one.[1] *Milliman*, 893 F.3d at 433 ("Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie[.]").

    Nor is there evidence that Career Academy's reason for including Ms. Fine's position among those budget cuts was pretextual. As Ms. Fine argues, Mr. Schlottman was the one who proposed eliminating her position. Thus, even if Mr. Garatoni gave final approval to that proposal, as Career Academy argues, Ms. Fine could prevail under a "cat's paw" theory if she could show that Mr. Schlottman included her position in the cuts because of her age. *Robinson v. Perales*, 894 F.3d 818, 832 (7th Cir. 2018). She has not offered evidence to that effect, though. Career Academy states that it included Ms. Fine's position among the cuts because it wanted to balance its budget while having the least effect on teaching. Ms. Fine does not dispute that she

---

[1] It is also worth noting that Mr. Schlottman's proposal for balancing the budget included reducing his own salary by three percent. As the Court previously observed, it would be quite unusual for someone to construct a pretext that includes reducing their own salary.

was not involved in day-to-day teaching activities, nor does she identify any other employee whose position could have been eliminated to produce as much savings with as little effect on teaching.

Instead, Ms. Fine offers several arguments to the effect that Mr. Schlottman was engaged in a scheme to get rid of older workers in favor of younger ones. Her arguments in that regard are conclusory and unsupported by adequate citations to the record, though. She argues, for example, that Career Academy had hired many employees under the age of 40. But Career Academy had hired many employees over the age of 40, too. Ms. Fine makes no effort to show that Career Academy hired younger employees at a rate disproportionate to their representation in the pool of qualified applicants. *See Addie*, 2019 WL 1382905, at *5. She also notes that Career Academy had actually been increasing its workforce. Career Academy had just opened an entirely new school, though, so it had to increase its workforce to support that expansion. But there is no dispute that once the school year started, Career Academy's budget showed a shortfall of $240,000 and that Career Academy made cuts to balance the budget.

Ms. Fine also notes that Mr. Schlottman divided teacher evaluations in January 2014 between himself and two administrators, Mr. Addie and Mr. Parsons, which she sees as part of a scheme to fire older workers. She hasn't shown how the assignment of evaluations had anything to do with the employees' ages, though; the administrators each evaluated similar mixes of older and younger employees. Ms. Fine further objects that she and other older employees were not given the option of bumping younger employees from their positions. No employees—older or younger—were ever given such an option, though. And the Age Discrimination in Employment Act does not require an employer to discriminate in favor of older employees, it only prohibits discrimination against those employees.

9

Ms. Fine next argues that Career Academy treated her worse than other similarly situated, younger employees. She particularly focuses on Ms. Darwish, a 24-year-old employee hired to replace Ms. Fine as Director of Career Development when Ms. Fine moved to the position of Director of Student Services. There are two problems with that argument, though. First, Ms. Fine moved to her new position in May 2015, before the need to cut expenses became apparent. That was a lateral move that did not reduce Ms. Fine's compensation, so it was not an adverse action. And after her new position was eliminated months later in September 2015, Ms. Fine's duties were absorbed by two principals—one age 47 and the other age 60—not by Ms. Darwish.

Second, even if Ms. Darwish had replaced Ms. Fine or absorbed her duties, Ms. Fine has not shown that their compensation was equivalent, such that they were comparable except for their age. In fact, Ms. Fine's salary was over fifty percent higher than Ms. Darwish's, which is a substantial difference. An employer is entitled to take that sort of factor into account in deciding which positions to eliminate. *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 724 (7th Cir. 2008) ("In deciding which employee to let go, [an employer] could weigh the monetary savings of eliminating one salary with the considerations of whom the [employer] needed more and who could be replaced more easily."). Since Career Academy's goal was to balance its budget, the fact that it eliminated Ms. Fine's position and not Ms. Darwish's does not point to age as a reason for the difference in treatment.

Ms. Fine finally argues that the release in the separation agreement that Career Academy offered shows that she was fired because of her age. Under the separation agreement, Career Academy offered to pay Ms. Fine severance for about three-and-a-half months, in return for a release of "any liability based on [her] employment with the School or the termination of such employment." [DE 35-30]. Ms. Fine argues that this was improper because it required her to

release her age discrimination claim or forfeit her severance money. The severance money was not hers to forfeit, though. She was not entitled to severance as part of her employment; Career Academy offered to make those additional payments in return for a release of any liability, just as a defendant might offer to make a settlement payment in return for dismissing a lawsuit. That sort of offer is not evidence of discrimination. *EEOC v. CVS Pharmacy, Inc.*, 809 F.3d 335, 341 (7th Cir. 2015); *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 793 (7th Cir. 2005) ("An employee who refuses to sign a release will not be offered the same deal as a terminated employee who is willing to sign the release.").

Ms. Fine argues that the EEOC found the release to be improper, apparently on the theory that releases in general could chill employees from filing charges of discrimination. *See CVS Pharmacy*, 809 F.3d at 339. But Ms. Fine does not claim to have been harmed by the release in that respect; she rejected the severance agreement, filed a charge of discrimination with the EEOC, and then filed suit. And in the same letter in which it expressed concern about the release, the EEOC stated that it did not find that Ms. Fine was fired because of her age. The severance agreement thus does not support Ms. Fine's age discrimination claim.

The Court therefore finds that Ms. Fine has not presented evidence from which a jury could find that she was fired because of her age. She has not offered evidence from which the jury could find that Career Academy's explanation for eliminating her position was pretextual, so she cannot prevail under the *McDonnell Douglas* framework. And even viewing all of the evidence collectively, *Ortiz*, 834 F.3d at 765, the evidence fails to point to Ms. Fine's age as a reason for terminating her employment. Accordingly, the Court must grant Career Academy's motion for summary judgment.

## IV.  CONCLUSION

For those reasons, the Court GRANTS the motion for summary judgment. [DE 24]. The Clerk is DIRECTED to enter judgment accordingly in favor of Career Academy.

SO ORDERED.

ENTERED:  May 10, 2019

>                   /s/ JON E. DEGUILIO
> Judge
> United States District Court